Our next case is Willner v. Dimon and as I understand it, Mr. Sofnes, you're going to talk to us for about 13 minutes and then Mr. Willner is going to talk to us for 2 minutes and then do your rebuttal later. Okay? We're ready to hear from you. May it please the court, Benjamin Sofnes representing Marguerite Willner, Michael Willner representing himself and he joins in our arguments. The district court committed reversible error when it held that FIREA required the Willners to exhaust the claims now appealed and dismissed those claims at the threshold. FIREA did not require exhaustion of those claims for three reasons. First, under FIREA, solvent banks can be sued for their own misconduct. That's the unanimous opinion of every court of appeals to consider the question and it's not disputed here. And in counts one and two, we're suing Chase and U.S. Bank for their own misconduct under the contract. Second, courts have interpreted FIREA not to bar affirmative defenses. This court has said so as have several other circuits and in count five, we're raising it as an affirmative defense to a threatened foreclosure. Finally, affirming the district court's disposition here would raise serious due process concerns that this court should avoid. The FDIC has already ruled that the Willners' claims were untimely because they were filed after a filing deadline that had already passed at the time their claims accrued. Your action is not to stop a foreclosure that's in process, is that right? It's a foreclosure that's been threatened, Your Honor, that's correct. But it's not going on now? It's not literally proceeding now, no, but it has been threatened and it's what they've indicated they want to do and it's what we've filed the action to stop and prevent because the contract doesn't permit it. And I think the key point I want to make here and it's dispositive is that solvent banks can be sued for their own misconduct under FIREA. The district court erred when it held that the Willners' claims were barred because they, quote, derived from Washington Mutual Bank's conduct. That's not the test. It's not sufficient that the claims be part of a story that at the very beginning of which somehow involved the bank, that every court of appeals that's considered this question agrees that FIREA does not bar suits where the claim is based on the acts of a healthy bank, a solvent bank that's taken over the claim. And the banks, my colleagues on this side, don't cite any case to the contrary. And the Willners' first and second claims, that's exactly what's going on. That claim can be, it's a long complaint, I realize, but those claims can really be summed up as follows. The parties here are in a purported contract and they're breaching the terms of the contract. They're acting beyond what the contract's allowed. That's their conduct. That's their misconduct. And that doesn't have anything to do with Washington Mutual Bank. And that's clear from our allegations. At page 79 of the joint appendix, you'll see the contract was drafted such that it doesn't allow foreclosure. At joint appendix page 80, the claim in counts one and two is based on the ordinary meaning of the terms of the contract. So, again, those really don't have anything to do with the acts or omissions of Washington Mutual Bank. What specific acts are U.S. Bank and Chase said to do here that is unrelated to what Washington Mutual did? They are the banks that are attempting to foreclose. They are reading the language of the contract incorrectly as permitting a foreclosure. And that's the only act, that's the only conduct that's at issue in this litigation. It's no conduct of Washington Mutual Bank. But it's based on what Washington Mutual did, correct? I would disagree, Your Honor. I mean, it's based on a contract that Washington Mutual originally drafted. But that really isn't the test, and it can't be. If it were, you'd have an assuming bank that would be immune for time immemorial. A mortgage could be 30, 40 years. And if the bank failed in year two, and 27 years later there's a breach of the way that works, the assuming bank would say, oh, no, you were meant to go through FIREA. That's really not the test. It's not meant to grant immunity to the assuming bank. It's meant to say, well, when we're winding up the assets of the failed bank, what are we going to do? And we think the Benson case out of the Ninth Circuit, which we cite at pages 24 and 25 of our brief, is really on point. There the plaintiff had alleged that Washington Mutual Bank had facilitated a Ponzi scheme by providing banking services to a Ponzi scheme. And they sued Chase, and they made two allegations. First, they said Chase is liable because it has successor liability. This was after Washington Mutual Bank failed. And second, they alleged that Chase engaged in its own independent conduct after the fact. And what the court held was that FIREA did bar the claims against Chase insofar as they were alleging successor liability, but that it did not bar the claims against Chase for their own independent conduct. So what is the conduct after the fact here? That's what I'm not taking those Judge Thacker's question to. And I thought your premise was that the deed of trust and the note are ineffective because Washington Mutual engaged in intentional fabrication to mislead the Wilmers into signing these documents. Let me – I apologize, Judge Thacker, if I didn't answer your question. And, Judge Agee, I'll try to break them apart. So in Claim 5, the claim is that the contract is void because there was – because Washington Mutual Bank acted as if it was two separate entities. But in Claims 1 and 2, that's not the claim. And there's no claim relating to any sort of misrepresentation or fraud. Claims 1 and 2 can be decided on the four corners of the contract. And the claim there in the complaint is that the deed of trust refers to a note signed by borrower. Borrower is a defined term, which is both Michael and Marguerite Wilner. And there is no note signed by Michael and Marguerite Wilner. So the deed of trust is not securing a different note signed by just Michael Wilner. That's an issue that can be decided on the four corners of the complaint. So when Chase and U.S. Bank attempt to foreclose under those contracts, they're exercising a right that they don't have. And that's their conduct. That's the conduct that we're talking about in Counts 1 and 2. I hope that that is responsive. Now, with respect to U.S. Bank, this is even clearer. U.S. Bank acquired its asset, which is the note, as the note holder, as the successor to LaSalle. And LaSalle acquired it as the trustee of the Moorish Bank Security prior to Washington Mutual Bank's failure. So there, there's no asset that ever was part of the failed entity, Washington Mutual, that went into the receivership estate. This is a separate, this is a whole separate asset that does not fall within FIREA's ambit. And so as to U.S. Bank, it's even clearer that we're suing it for conduct unrelated to any asset that entered the receivership, and again, and dispositively, for their own conduct. I'll make the additional point that courts have interpreted FIREA not to bar affirmative defenses. And Counts 1 and 5 here are affirmative defenses, and I'll focus on Count 5. How can a count and a complaint be an affirmative defense? That just seems counterintuitive to me. Your Honor, I understand the point, but in the context of FIREA, courts have said, and including the Balduck v. Beale Bank case, and in that case, Judge Boudin explained that it doesn't actually, it doesn't matter formally who's the plaintiff or who's the defendant. What we look at in the context of FIREA and determining the meaning of an affirmative defense in that context is what the relief being sought is. And there you can see that what the relief being sought was an attempt to prevent a foreclosure that the plaintiffs there said the contracts didn't allow, and that's exactly what's happening here. So in the- That would also have the effect of cutting off the bank's rights to ever enforce the underlying documents, right? Well, it would enforce the fact that they do not have a right to enforce the document, yes, Your Honor, as a necessary consequence there. But that doesn't affect the posture of the parties here, which is that one, which is, you know, that the banks are asserting a right to foreclose, and the Wilners are saying, hang on, we're going to go to court and get a finding that you can't do that. And in the context of FIREA, and this is Balduck, and this is the 11th Circuit case that we cite in our brief, that that's not, that that's considered an affirmative defense under FIREA. Now, the only case they cite on the contrary is the L&V court case, and that's both an outlier because it rejected the courts that have found that FIREA permits affirmative defenses, but it's also distinguishing- There are plenty of courts that disagree with Balduck, though. I'm sorry, Your Honor? I said there are plenty of courts that disagree with Balduck's interpretation. That seems to be something of an outlier. I'm aware of two cases that disagree, Your Honor, and I'm aware of two or three that are on the side of Balduck. Obviously, we think Balduck got it correctly. We wouldn't represent that it's a unanimous view, but it is the view of the First Circuit, and we think it's persuasive. And it's also the view of, you know, this court in the Knott case said that FIREA permits affirmative defenses. That's an unpublished opinion, so it's not a, pardon me, it's not a binding precedent, but it's a persuasive precedent based on the ability to persuade, and it's cited by other circuits. Judge Diaz's question is that it just seems like an odd place to say that you have an affirmative defense when you're the plaintiff, and you're raising it as an offensive mechanism in order to seek relief. Your Honor, I understand the point, and in the context of FIREA, courts have said that the formal designation of plaintiff or defendant isn't dispositive of the question whether it counts as an affirmative defense. And I would point the court to, pardon me here, I'll just, to page, I think it's a 31 of our brief, and I'll try to find a site for it in the reply when I come back on rebuttal. But I think, you know, it's true that defense has a sound to it that suggests it should be the defendant, but that's not what, the courts interpreting FIREA have said that that's not critical, and what you want to look at is the relief being sought. Here, in our accounts, asserting, asking for declaratory judgment, this is attempting to stop an attempted foreclosure, and so that's a defensive posture, and under the courts that have interpreted FIREA, that's defensive. I finally want to note that, although we believe we're putting forth the correct reading of the statute here, and again, the circuit courts that have interpreted FIREA unanimously agree here. But it also, interpreting the statute this way, avoids serious due process issues. FIREA sets up a bar date for claims relevant to the winding up of a failed bank. The bar date here was December 30, 2008. Claims that post-date the bar date are disallowed, and the statute says that disallowance is final. Our claims didn't even accrue until 2012, and nevertheless, the FDIC said, those are untimely, they weren't filed by 2008. So they're saying that the due date was prior to any date they could have filed, that they were impossible to file. So if the FDIC process provides the only avenue of doing this, then that creates an impossibility of filing because it's late before the FDIC, and then that lateness may well be final. Your claim is, if I understand this correctly, your claim is that the term borrower is used in the note in the deed of trust, and effectively defines instruments that do not exist because of the signature descriptions. I assume the definitions of borrower in those documents, that fact would have been known before the bar date. Yes, Your Honor, but there would be no reason to bring a suit. Again, what's alleged in the complaint is that this was a deliberate contract. This wasn't a screw-up. This was the Wilners showed up at the closing, saw that what the documents put in front of them had attempted to provide a note that was secured by the deed of trust, and they made a change in the text. They made a change to the four corners of the document such that it doesn't secure. Because they understood that this is an intentional act where you have a note, and then you have a deed of trust that doesn't secure it. And so there'd be no reason to, they might have that awareness, but there would be no claim. There would be no breach. It's only when Chase or U.S. Bank makes the decision to attempt to foreclose under a contract that does not permit it, that a claim accrues and that it makes sense to bring it. There would be no claim to bring prior to the bar date, simply under a contract that they think is working as intended for the time being. So the claim only accrues when there's the attempt to foreclose and to go beyond what the contract permits. And so that's why you have the accrual date of 2012 and the impossibility of bringing any claim in time for the bar date. I see that I'm running low on my time. I'd be happy to reserve the balance of my time for rebuttal unless there are other questions. Thank you very much. Mr. Wilner. May it please the Court, Michael Wilner representing myself. The complaint alleges that Chase, as the loan servicer, falsely represented the material fact that it intended to help me avoid foreclosure. Chase indicated that a forbearance was possible, so I asked for a three-month forbearance so I could hire a company to sell the property at issue at a private auction. But Chase claimed that it had to evaluate me for a HAMP loan first, HAMP loan modification first. And though HAMP guidelines required the determination to be made in 30 days, it took Chase a year to notify me that it rejected my application,  Chase knew day one that a $3 million loan would not qualify for HAMP, which had a loan limit of $730,000. So Chase also refused to grant me the forbearance without an explanation. The complaint alleges that Chase always intended to foreclose and buy the property for a credit bid, thereby reaping almost $2 million of equity in the property. Chase even attempted to coerce me to drop my claim of recoupment by threatening, in writing, to file baseless criminal charges against me. And even if Chase truly intended to help me, well, then it was negligent. I had no privity of contract with Chase, and I do not allege that Chase had a duty to grant or even evaluate me for a modification. But once Chase committed to help on its own volition, as a good Samaritan, if you will, then it had a duty of reasonable care, which it breached. The complaint also plausibly alleges that Chase's CEO, James Diamond, is liable for Chase's tortious conduct because its employees were implementing his strategy of maximizing profits, regardless of the bank's legal obligations. Mr. Diamond acknowledged, in writing, that he was responsible for the conduct of Chase's agents and employees regarding foreclosure activity, and under Virginia law, a CEO is liable for the company's tortious conduct where he approved of said conduct. So I respectfully request this Honorable Court to reverse the District Court's dismissal of my 14th and 15th causes of action. Thank you very much. Thank you, Your Honor. Mr. McIntosh. Good morning, Your Honor. May it please the Court, Brent McIntosh, Sullivan & Cromwell, on behalf of JPMorgan Chase Bank, N.A., and its CEO, James Diamond. As we've filed, my friends on behalf of U.S. Bank will reserve five minutes as well, and I will address the general dismissal of the first, second, and fifth causes of action. They may have additional points specific to U.S. Bank, and I will also address the servicing claims against Chase and Mr. Diamond. I want to make three points I want to be sure to address while I'm here at the podium. The first is that the dismissal of the first, second, and fifth causes of action is warranted whether or not they are based on the acts and omissions of Washington Mutual Bank. The Court specifically dismissed them both as a jurisdictional matter to the extent they were based on Washington Mutual Bank's acts and omissions, and secondly, then turned to the question of whether, assuming away Washington Mutual Bank's acts and omissions and simply reading them on the face of the contract, whether they ought to be dismissed, and dismissed that on a separate alternative ground, specifically stating that those claims were based on Chase's behavior and based on the note in deed of trust, failed to state a claim as a matter of law. That's page six of the slip opinion. Why don't you just give us a brief overview of what this alternative ground is? The alternative ground, Your Honor, is if you look at the contract, the deed of trust specifically contains a provision stating that if a borrower signs the deed of trust but not the note, while the borrower is not obliged to repay the note, its interest in the property is subject to forfeiture. This is paragraph 13 of the deed of trust. It specifically makes this point. Moreover, as the parties briefed and as the Court decided below, there are decisions under Virginia law that wherein a husband and wife sign a deed of trust and only one of them signs the note. The fact that default under the note gets to both of their property interests in the policy. I'll give you the cases in just a moment. That was the Cosme and Mondesita decisions, which are discussed in the slip opinion at page six. My friend doesn't dispute that this is the law. He only says that it's dicta. It was briefed in both parties' briefs and in the reply below, and it is explicitly stated as an alternative ground for dismissal where the Court says that under that theory it fails to state a claim as a matter of law. My friend says that that's not a holding because the Court had also dismissed some jurisdictional grounds in the prior paragraphs, but this Court routinely reviews the actions or the decisions of district courts that have dismissed on both jurisdictional and non-jurisdictional grounds, and it can affirm on either ground. The third point I wanted to make, be sure to make, is that the due process violation to the extent there is one here is entirely of the making of the plaintiff, for they have failed to take the process that is available to them. FIREA actually, you'll see that in their brief, but FIREA has a provision for late accruing claims, for claims, for example, where the claimant does not have notice. This is 1821 of Title 12, and specifically D5C2, and the courts and the FDIC have both construed that exception to include later accruing claims where the plaintiff may have been on notice that there was receivership but had no idea that he should file a claim because the claim accrued only later. So in this instance, the avenue of relief would be to file a claim as they did. The FDIC denied it as untimely. If that is an incorrect denial as untimely, they have a remedy, and that remedy is to sue for review of that decision in one of two courts, the DDC or the court where the failed bank sat, which is in this case Seattle, Western District of Washington. You have to challenge the denial as timeliness. Courts have said that you may challenge the timeliness denial, and indeed this court has said so. So those are the three or the third point I want to make. Whether or not they've taken that step is not before us here. Is that right? That's correct, Your Honor. They are obliged to take that step, but the question of whether they've done so is not one that this court or the court below has jurisdiction over. I want to address a number of things that were said in the opening argument here. First of all, this is regardless of what the jurisprudence is on affirmative defenses in FIREA, and we would submit that BOLDIC is wrongly decided because BOLDIC does not actually engage with the second prong of the FIREA bar, which is acts and omissions of the failed bank. It simply ignores that prong. But putting that aside, these are not affirmative defenses that are being filed here. First of all, for the reason Judge Diaz cited, which is these are plaintiffs bringing a lawsuit. But second, an affirmative defense is a defense that assumes the allegations of the complaint are true and said, nonetheless, the person bringing the claim has no legal right to do so. For example, accord and satisfaction, duress, estoppel, statute of limitations. These are things that assume the truth of the facts and nonetheless say that there's no right to recover. That's not what's happening here. Here the complaint, if we were to have filed the complaint, would have said there's a valid deed of trust and a right to foreclose, and their answer would have been, no, there isn't. So they would have been denying the facts. These are not affirmative defenses. Moreover, they are seeking relief other than the ones that affirmative defenses seek. If you look at Joint Appendix 110 to 112, you'll see that they requested the voiding of the note and the deed of trust, rescission, recruitment, damages in the amount of nearly $13 million to keep the property without paying on the note, an injunction, and an order quieting title. So for that reason, I think that this really doesn't fall within the affirmative defenses exception to the extent there even is such an exception. This Court has not recognized one. In addition, Mr. Softness made the point that the FIREA bar can't apply here because this is not an asset currently in the receivership. That is not the standard. The standard under 1821D13D is whether the claim is based on an act or omission of the failed bank. And while they're briefs, disavow any reliance on acts or omissions of the failed bank. If you read the actual complaint, both the causes of action themselves and the body of the complaint are about three-quarters based on the action and omissions of Washington Mutual Bank. Or does the claim seek payment from the assets of the receivership? Here, the truth is they've posited a scenario in which somebody gets left holding the bag here, whether it be the Wilners or U.S. Bank. One of them gets left holding the bag here under their theory. The FDIC actually has a process by which that need not happen. The FDIC's process would be sufficient to resolve this in a way that no one is left holding the bag. Under the FDIC's process, if they had brought their claim in a timely fashion, and their claims are indeed meritorious, the FDIC had the power to reclaim the mortgage servicing right, which my client Chase holds under the P&A Agreement, Section 3.6, affords them the opportunity to do so. They could have then declined to foreclose against the Wilners. Which is all the relief that they're entitled to, if indeed they're bringing in an affirmative defense here. That leaves U.S. Bank holding the bag, because U.S. Bank has thought it bought the proceeds, or is trustee of a valid mortgage, and indeed is not. The FDIC can make U.S. Bank whole from the assets of the receivership, because U.S. Bank would have a claim on the receivership at that point. So the FDIC is the one party that can square the accounts. It can look to both parties and solve the problem. It will be paying out of the receivership estate. It also has the power to file a professional liability suit against those at Washington Mutual Bank who caused the loss here that would be paid out of the receivership estate. The FDIC is posited in the briefs that my friend has filed as essentially a cash register that simply pays out on claims. But that's not what the FDIC's role as receiver is. The FDIC as receiver succeeds to, quote, all rights, titles, powers, and privileges of the failed bank. That's 1821D2A1 of Title 12. So it's not just paying creditors. It can sue and be sued. It can enter and break contracts. It can pursue these professional liability claims against former Washington Mutual Bank employees. So if WAMU could have made it right here, and I don't think anyone disputes that WAMU could have made it right here, by not foreclosing as servicer and paying out to U.S. Bank, which was harmed, then the FDIC can make it right here. That policy, the FIREA policy, which this court in Tillman has called an elaborate administrative scheme and a dispute resolution structure that allows RTC, which is the predecessor to the FDIC in these contexts, to collect assets, determine rights, resolve claims before these matters get to court. This is a process that is sufficient to solve all parties' claims here. Because, indeed, if what the Willners allege is true, then someone here at Washington Mutual Bank, a former employee of Washington Mutual Bank, has done a grave service not just to the Willners, but to U.S. Bank, which is out money that ought to be paid to them, to Chase, a successor servicer, which faces immensely increased servicing burdens and the cost of standing up here in court. And it is the FDIC that can square those accounts among all parties. So the nature of the remedy request, it doesn't limit the ability of the agency to act, whether seeking damages or equitable relief or otherwise? It does not. The FDIC could bring a lawsuit attempting to – it could reclaim the mortgage servicing right, decline to foreclose, and then make things right with U.S. Bank. It could sue the former WMB employee who caused this harm. The nature of the lawsuit does not dictate what the FDIC can do. It exceeds the all-right title and powers of Washington Mutual Bank. And to the extent Washington Mutual Bank, as a matter of its rights, could have said, as servicer, we're not going to foreclose on the Willners, and you know what, we messed up, so we need to pay out to U.S. Bank, the FDIC could do that. But other than for informational purposes, none of those items are really before us? No, Your Honor. I'm only responding to the point in the reply brief, which says that no one has explained how the FDIC could possibly resolve these claims. And anyone familiar with the FIREA receivership process knows that the FDIC has a massive staff that is designed exactly to sort through difficult claims like this and process them. So you're right, it's not – the question of viability of the receivership process is not one that this Court need decide because it simply lacks jurisdiction to the extent the claims are based on the actions or omissions of Washington Mutual Bank. But I wanted to not leave the Court with the impression that the receivership process is simply a cash register that pays out claims. I did want to address Mr. Willner's point regarding his servicing claims about the idea that the HAMP modification could have been thumbs up or thumbs down immediately because of the size of his loan. He selectively focuses on the possibility of a HAMP modification, but if you read his actual complaint, what Chase told him was that he did not qualify for a HAMP modification or other modification programs. That's paragraph 226 of his complaint. So while it may have been possible to decide the HAMP question more quickly, there's no allegation that there was any deadline or that they were not considering other modification possibilities. I'm happy to address anything else the Court might have, but otherwise I'll sit down and let U.S. Bank's counsel come up. All right, thank you very much. Thank you. Mr. Patterson. Good morning. Matthew Patterson here on behalf of U.S. Bank and Select Portfolio Servicing Incorporated. May it please the Court, I do not have much to add to Mr. McIntosh's summary, so I will not belabor any of those points. The one issue that I did want to raise and address, which was at least brought up in the briefing somewhat substantially, is the allegation by Mr. Softness that the lower court erred in refusing to allow the Wildners to amend their complaint. And I just want to go through a few reasons why we think that argument fails. First, as a threshold matter, it's worth noting that that particular legal issue must be decided here under the abuse of discretion standard as opposed to the de novo standard. So the appellants on that issue have a heightened burden that they must meet, and again we feel that they cannot meet that burden. Most notably, there was never a motion filed at the lower level to request leave for the Wildners to be able to amend their complaint. The cases cited by the appellants are all in the context of formal motions being filed and denied, and the appellate court then looking at whether discretion was abused in the lower court's decision. Here, the requests, to the extent they exist at all, were buried within the briefs. I think each one was the last sentence of the conclusion paragraph that essentially I would characterize as the Wildners saying, we should win, but if we lose, we would like to amend. But certainly there was never any sort of motion filed, and we've cited the Cozzarelli case, which was heard in this court and decided, and very similarly the request for leave to amend in Cozzarelli was buried in a footnote and in the last sentence of objections, and the Fourth Circuit held in that case that a district court is not required to scour briefing to search out requests to amend, and in fact in Cozzarelli the court said that the lower court did not abuse its discretion for denying a motion that was never actually made at the lower level. Secondly, we believe their argument fails because even as we sit here today or stand here today, the appellants have still never identified how they would cure the defects in their complaint. As is pointed out in the briefing, the complaint was over 100 pages and 500 paragraphs and included 20 some thousand words, so this is not a situation where the complaint lacks detail, despite any other deficiencies that it may have. And in the absence of them proposing how they would attempt to cure the complaint, we feel that any such amendment is futile, which is its own reason for a denial of a request to amend, specifically as is held in several of the cases we cite. The problem with the complaint in this case, as Mr. McIntosh just pointed out, is fundamentally the legal theory involved and the facts as pled simply do not entitle them to relief, even if assumed to be true. So this is not a situation where by adding certain elements or taking things out of the complaint, it's suddenly going to cure the complaint. The problems with the complaint will be present, regardless of how they attempt to amend around the district court's order. And then the last point is it's worth noting that Mr. Wilner is a lawyer. Certainly you all just saw him argue on his own behalf. I think even a cursory review of the briefing and the complaint in this case would suggest that the Wilners are not run-of-the-mill pro se litigants. Certainly they're sophisticated individuals, and even the complaint sets forth their accomplishments and qualifications, which again are impressive. So while the appellants argue they're entitled to wide leniency, the facts and even what's in the record suggest that the Wilners are not entitled to leniency that might be granted to a normal pro se litigant. And with that, I'm happy to answer any questions the panel may have. Thank you very much. Mr. Sofnas? Thank you, Your Honor. Perhaps ambitiously, I'll try to make five quick points on rebuttal. First, solvent banks can be sued for their own misconduct. My friend on the other side said that our complaint is at least three-quarters after omissions of Washington Mutual. We don't concede that, but even if it were true, that would leave a quarter of the claims as claims against Chase and U.S. Bank. Now, we think the claims we've appealed certainly are, as I've outlined, claims against Chase and U.S. Bank. They allege the existence of a contract, and these banks, the ones in this room, are acting beyond what the contract authorizes. On the point that FIREA permits affirmative defenses, I owed you a cite at page 29 of our brief. We note the Balduc case saying who happens to be the plaintiff is not controlling. We think Balduc got it right, and FIREA does permit affirmative defenses. On the due process point, I don't understand them to be saying that there's a claim we could have brought prior to the bar date. As I note, this doesn't become a claim until Chase or U.S. Bank threatens to foreclose and threatens to act beyond what the contract permits. That's when there's a claim that accrues, and that's the claim that we try to bring. I thought Mr. McIntosh's point was there's a process for addressing that within the context of the administrative regime. I believe he said that there's a provision that permits a late claim if the claimant didn't receive notice in time. This isn't about not receiving notice in time. This is about a literal impossibility of filing in time, and I want to note that there are cases that talk about whether that language can or should be read to do it, but we know here that the FDIC didn't. As we filed in our supplemental addendum, the FDIC rejected the claim as untimely, did not consider the accrual date of the claim. So we think this falls squarely within and is, in fact, worse than the Elmco Properties case where this court said that not having the notice and being able to file in time created an impossibility situation that implicated due process. They don't distinguish Elmco. They don't dispute Elmco. Their cases don't address this at all. The Tellato case didn't have a due process problem. The Tillman case took it very seriously. In fact, requested supplemental briefing on the question whether the claimant had notice in time to file, found that he did. Here, of course, the facts are quite different. On the merits, the merits were not decided by the court below. We dispute that. The court said that the note it made about the merits was, quote, not essential to its holding. That's the essence of dictum, and we think here particularly in that the district court considered all the claims together and didn't differentiate between which ones were targeted at Acts of Washington Mutual and which ones were targeted at Acts of U.S. Bank, that that's critical that that claim actually be decided and weighed properly. Is it your position that the alternative holding that opposing counsel says took place did not take place? Correct, Your Honor. We believe it was a dictum because the court stated it was not essential to its holding, and that's what we understand the dictum to be. We also dispute, insofar as it was reached, that the Cosme case didn't involve the same thing here, and I don't understand my friends on the other side to dispute the definition of borrower. They cite a different provision in the Deed of Trust, but they don't dispute that the Deed of Trust defines borrower in a certain way, as Michael and Marguerite Wilner, and that there is no note that says it secures the note signed by borrower, and they don't dispute that language, and there is no note signed by borrower. The Cosme case didn't address that claim where there was a dispute over that definition there, and we think that that definition is quite significant, given the fact that, again, it was made in the room. So we had parties in a room who see that a contract is set up one way, and they change it a different way. Finally, I want to make a quick point about leave to amend. Ms. Rims and Mr. Wilner made four requests for leave to amend. We note those at footnote 37 of our brief. The district court gave no reasons at all, didn't even address it. Their entire argument boils down to crying foul. These are motions for leave to amend. They were not a formal motion, Your Honor. They were requests added into their briefing, and we acknowledge there was no formal motion. This was pro se litigants. Certainly, I don't understand there to be a non-run-of-the-mill pro se plaintiff exception. Mrs. Wilner is not a lawyer, didn't go to law school. I see I'm behind my time, if I might finish my point. Okay. And they cite no precedential case that authorizes denying leave to amend on this case. We'd certainly love the opportunity to amend and to make clear that this case can be easily described in accounts one and two. It's a contract between the parties here and the parties on that side, and there was a breach, and that was what we'd say. And so we'd respectfully ask that the court reverse or at a minimum remand with instructions to grant us leave to amend. Thank you, Your Honor. Ms. Wilner, you have one minute. Thank you, Your Honors. I just want to point out that when we went to the closing, my wife did not want any part of this loan. And she said, take me off that note. And they said, okay, well, just sign the deed of trust so that we can have a lien on Mr. Wilner's interest in the house. So we understood that we were creating a tenancy by the entire common, and I was putting my interest up, she was not putting hers interest up. And that's how we're distinguished from COSME. There was no issue in COSME as to whether or not the deed of trust actually identified the note. It was just, oh, she signed the note, she signed the deed of trust, she didn't sign the note. Well, the deed of trust in COSME may have described the note properly. In ours, it does not. They took her off the note, and they talked her into signing that deed of trust. And she did not want to put her interest up. And I'm done. All right, thank you very much. Thank you, Your Honor. We'll come down and greet counsel and move on to our last case.
judges: G. Steven Agee, Albert Diaz, Stephanie D. Thacker